UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GERALD WALKER,

                                   Plaintiff,

    v.                                                9:22-CV-1133
                                                                  (GTS/ATB)

SUPERINTENDENT UHLER, et al.,

                                   Defendants.

---

APPEARANCES:

GERALD WALKER
Plaintiff, pro se
98-A-2082
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

GLENN T. SUDDABY
United States District Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

       In September 2022, pro se plaintiff Gerald Walker ("plaintiff") commenced this action by submitting a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") in the United States District Court for the Southern District of New York ("Southern District"), with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 3 ("IFP" Application). The complaint contained allegations of wrongdoing that occurred, if at all, while plaintiff was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing Sing Correctional Facility ("Sing Sing C.F.") and Upstate

Correctional Facility ("Upstate C.F.").  *See generally* Compl.

By Decision and Order filed on October 24, 2022 (the "October Order"), Chief District Judge Laura Taylor Swain granted plaintiff's IFP Application and severed and transferred plaintiff's claims regarding events that occurred at Upstate C.F. to the Northern District of New York.  Dkt. No. 7.

In a Decision and Order filed on November 28, 2022 (the "November Order"), this Court reviewed the sufficiency of the complaint, related to the claims that arose in the Northern District, in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1).  Dkt. No. 9.  The Court dismissed all claims, without prejudice, for failure to state a cause of action.  *Id*.  In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint.  *Id*.

Plaintiff's amended complaint is now before the Court for review.  Dkt. No. 11 ("Am. Compl.").

## II. SUFFICIENCY OF AMENDED COMPLAINT

### A. Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the November Order and it will not be restated in this Decision and Order.  *See* Dkt. No. 9 at 2-3.

### B. Summary of Amended Complaint

With the amended pleading, plaintiff adds the following new defendants: New York State Attorney General Letitia James ("James"), Commissioner Anthony Annucci ("Annucci"),

SHU Director A. Rodriguez ("Rodriguez"), SORC St. Mary ("St. Mary"), OMH Supervisor LaPaige ("LaPaige"), Correctional Officer Smith ("Smith"), ORC Livernoise ("Livernoise"), and John Does #1 through #4.[1]  *See generally* Am. Compl.  The amended complaint does not include claims against Captain John Doe.[2]  *See id.*

The following facts are set forth as alleged by plaintiff in his amended complaint.

On August 26, 2022, plaintiff was transferred from Sing Sing C.F. to the "RRU" at Upstate C.F. to serve a term of segregated confinement.[3]  Am. Compl. at 11.  From August 30, 2022 until January 3, 2023, plaintiff was confined to a "double cell" and denied supplies to clean his cell, access to the barber shop, nutritious food, recreation, access to his personal property, religious services, tablet use, showers, commissary, work assignments, and reasonable accommodations.  *Id.* at 3, 11, 14, 15.  Plaintiff did not receive an "individualized assessment," work assignment, or periodic reviews and, as a result, was unable to complete the RRU programming.  *Id*. at 5-6.  Plaintiff was released from his cell for two hours each day for congregate programming.  *Id*. at 11.  When plaintiff was removed from his cell, his hands, waist, and feet were mechanically restrained.  Am. Compl. at 1-2, 12, 13.

Construing the amended complaint liberally, plaintiff asserts the following: (1) Eighth Amendment claims related to his conditions of confinement; (2) Fourteenth Amendment procedural due process claims against James and Annucci related to the use of mechanical

---

[1]  The Clerk of the Court is directed to add these individuals to the docket report as defendants herein.

[2]  The Clerk of the Court is directed to terminate Captain John Doe as a defendant herein.

[3]  The [Humane Alternatives to Long-Term Solitary Confinement] HALT Act created Residential Rehabilitation Units ("RRUs"), which are "therapeutic and trauma-informed, and aim to address individual treatment and rehabilitation needs and underlying causes of problematic behaviors."  *New York State Corr. Officers & Police Benevolent Assocation, Inc. v. Hochul*, No. 1:21-CV-535 (MAD/CFH), 2022 WL 2180050, at *1 (N.D.N.Y. June 16, 2022) (citing N.Y. Corr. Law §137(2)(34)).

3

restraints; (3) Fourteenth Amendment equal protection claims; (4) Fourteenth Amendment claims related to the deprivation of property against John Doe #1 and John Doe #2; (5) First Amendment claims related to his religious rights against Demers; (6) conspiracy claims; and (7) claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. *See generally* Am. Compl.  Plaintiff seeks monetary damages, declaratory relief, and injunctive relief.  *Id*. at 15.

### C.  Analysis

The law related to personal involvement was discussed in the November Order:

> In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability."). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id*. (quoting *Iqbal*, 556 U.S. at 676).

Dkt. No. 9 at 7.

#### 1.  Eighth Amendment Claims

Plaintiff asserts Eighth Amendment claims related to the duration and conditions of his confinement in the RRU against Rodriguez, Uhler, Bishop, Demers, St. Mary, Livernoise, Smith, LaPaige, John Doe #1, John Doe #2, John Doe #3, John Doe #4.  *See generally* Am. Compl.

While the United States Constitution " 'does not mandate comfortable prisons,' ... neither does it permit inhumane" treatment of those in confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  "To

4

demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468,480 (2d Cir. 1996) (citation omitted).  To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id*. (citation omitted). "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).  With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted).  To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

Here, even assuming the conditions of plaintiff's RRU confinement satisfied the objective prong of the Eighth Amendment analysis, the amended complaint lacks facts to suggest that defendants were deliberately indifferent.  As discussed *supra*, to state a cognizable Section 1983 claim, a complaint must allege the personal involvement of each of the defendants named.  Additionally, Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint include sufficient allegations to provide "each defendant fair notice of what the plaintiff's claim is and ground upon which it rests." *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (internal quotation marks omitted); *see Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

With respect to Rodriguez, Uhler, Bishop, Demers, Livernoise, LaPaige, John Doe #1, and John Doe #2, plaintiff makes sweeping general accusations that he was deprived of

5

basic human needs, *see* Am. Compl. at 11-14, without dates, times, places, or references to a specific defendant. Indeed, the amended complaint lacks facts that would allow this Court to infer that any particular individual acted with deliberate indifference. As such, plaintiff's allegations regarding his conditions of confinement in the RRU are simply too vague to provide any sort of notice of a claim against any particular defendant. *See Atuahene*, 10 Fed. App'x at 34 ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard, even after the district court graciously accorded him several opportunities to correct its manifest flaws."); *see also Ying Li v. City of N.Y.*, 246 F.Supp.3d 578, 598 (E.D.N.Y. 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim.").

With respect to Smith, plaintiff claims that he refused to allow plaintiff to attend programming on one occasion. *See* Am. Compl. at 6. This deprivation, without more, did not deprive plaintiff of minimal civilized measure of the necessities of life, as required to implicate a constitutional right. Similarly, the claim that John Doe #3 and John Doe #4 violated plaintiff's Eighth Amendment right when they refused to allow him to have a haircut on November 23, 2022, *see* Am. Compl. at 8, does not rise to the level of a constitutional violation. *See Lombardo v. Freebern,* No. 16-CV-7146, 2019 WL 1129490, at *3 (S.D.N.Y. Mar. 12, 2019) (holding that the one-time denial of a shave does not amount to a constitutional violation); *see also Sterling v. Taylor*, No. 5:16-CV-00120, 2017 WL 1511296, at *4 (E.D. Ark. Feb. 28, 2017) (holding that deprivation of a hair cut did not deprive the inmate of an "identifiable human need"), *report and recommendation adopted*, 2017 WL

1528734 (E.D. Ark. Apr. 25, 2017), *aff'd as modified sub nom. Sterling v. Taylor*, 710 Fed. App'x 715 (8th Cir. 2018).

With respect to St. Mary, plaintiff alleges he "made her personally aware" of the alleged constitutional violations in a "four page letter." Am. Compl. at 5. Initially, the Court notes that the pleading lacks facts related to when and where plaintiff forwarded his letters and what response, if any, he received from St. Mary. Further, even assuming St. Mary received plaintiff's letters, *Tangreti* eliminated supervisory liability and thus, plaintiff fails to state a claim against St. Mary. *See McCrary v. Marks*, 836 Fed. App'x 73, 74 (2d Cir. 2021).

Accordingly, plaintiff's Eighth Amendment claims are dismissed.[4]

### 4. Fourteenth Amendment

#### a. Due Process

Plaintiff asserts a due process claims related to the use of mechanical restraints because he was not provided with a hearing or the ability to challenge the implementation of the policy. *See* Am. Compl. at 12.

To successfully state a claim under 42 U.S.C. § 1983 for denial of procedural due process, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996). A prisoner can show deprivation of a liberty interest under the due process clause when a

---

[4] Alternatively, the Court notes that, "[d]ouble bunking is not per se unconstitutional." *Barclay v. New York*, 477 F.Supp.2d 546, 554 (N.D.N.Y. 2007) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981)). Because the amended complaint lacks facts to plausibly suggest that plaintiff suffered any injury or constitutional violation as a result of being confined to a double bunk cell, plaintiff's Eighth Amendment claim, on this ground, is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim.

prison condition imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (same).

"[C]ourts in this circuit have found that the use of mechanical restraints is typical in prison[]" and "may still be used in SHU, to transport inmates both within and outside of the facility, or by order of the superintendent and/or a physician when deemed necessary to prevent injury to other prisoners." *Winnie v. Durant*, No. 9:20-CV-502 (DNH), 2021 WL 1999782, at *5 (N.D.N.Y. May 19, 2021) (citing *Ruggiero v. Fischer*, 807 Fed. App'x 70, 73 (2d Cir. 2020)) (summary order); *see also Gibson v. Rosati*, No. 9:13-CV-00503 (GLS/TWD), 2017 WL 1534891, at *18 (N.D.N.Y. Mar. 10, 2017) ("[p]lacing a prison inmate in restraints does not impose the 'atypical and significant hardship' envisioned in *Sandin*[]"), *report and recommendation adopted*, 2017 WL 1512371 (N.D.N.Y. Apr. 27, 2017).

Because plaintiff has failed to plead the deprivation of a liberty interest, plaintiff's procedural due process claims are dismissed. *See Gibson*, 2017 WL 1534891, at *18 (reasoning that the plaintiff, who was in the SHU at Upstate C.F., had no liberty interest because inmates at Upstate "are required to wear mechanical restraints when outside of their cell").[5]

---

[5] Alternatively, this claim is dismissed for failure to plead personal involvement. Plaintiff's claim against James is based upon her position as Attorney General of the State of New York with the responsibility "to uphold and enforce" the HALT Act. Am. Compl. at 1. Similarly, the claim against Annucci is seemingly based upon his position in the prison hierarchy. Without more, these allegations do not suggest that James or Annucci was personally involved in any alleged constitutional violations. *See e.g., Lewis v. Cuomo*, No. 20-CV-6316, 2021 WL 5827274, at *12 (W.D.N.Y. Dec. 8, 2021) (holding that James' position related to the enforcement of executive orders does not amount to personal involvement in the alleged constitutional violations); *see also Sadiq v. Vitacco*, No. 22-CV-1064, 2022 WL 17177789, at *3 (E.D.N.Y. Nov. 23, 2022) (dismissing claim that James "unequivocally does not apply law equally to the people in the same situation" as "bald assertions and conclusions of law are insufficient to establish personal involvement"); *see Zielinski v. Annucci*, No. 17-CV-1042 (DNH), 2021 WL 2744684, at *8 (N.D.N.Y. July 2, 2021) (dismissing claims against Annucci based simply upon his position as Acting Commissioner).

### b. Equal Protection

Plaintiff claims that "similarly situated" inmates in the RRU at Five Points C.F., Cayuga C.F., and Comstock C.F. were in possession of their property and were permitted to use tablets. Am. Compl. at 9.

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Myers v. Barrett*, No. 95-CV-1534 (RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997 (citation omitted). In addition, a valid equal protection claim may be brought by a "class of one," "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

As discussed *supra*, the amended complaint lacks facts suggesting that defendants were personally involved in the alleged constitutional violations. Moreover, plaintiff's conclusory claims are insufficient to plausibly suggest an equal protection violation. *See Barnes v. Henderson*, 490 F.Supp.2d 313, 318 (W.D.N.Y. 2007) (dismissing the equal protection claim because the plaintiff did not identify any similarly situated inmates who were treated differently from him, "much less shown an 'extremely high' level of similarity between them").

9

Accordingly, plaintiff's Equal Protection claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Deprivation of Property

Plaintiff claims that John Does #1 and #2 failed to provide him with his personal property in violation of the Fourteenth Amendment. Am. Compl. at 7.

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing Parratt v. Taylor, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed. App'x. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent - will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.'") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir.1983) (per curiam); *see also Shabazz v. Pico*, 994 F.Supp. 460, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that the defendants destroyed his property in violation of his due process rights). For the reasons set forth herein, plaintiff's due process claims related to property loss are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### 6. First Amendment - Religion

Plaintiff claims that Demers refused to allow him to attend services "without justification."  Am. Compl. at 13.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system."  *Id*. (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).  If a prisoner asserts a First Amendment violation based on a free exercise claim, a court must evaluate (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective.  *Farid v. Smith*, 850 F.2d 917, 925-26 (2d Cir. 1988).  A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[6]  A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular

---

[6] The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Ford*, 352 F.3d at 592 (quoting *Emp't Div*., 494 U.S. at 887); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim).  In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

11

belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996).

Plaintiff summarily states that "all my requests to attend services have been denied." Initially, the Court notes that the vague allegations fail to satisfy the Rule 8 pleading requirements. To wit, the amended complaint lacks facts related to when plaintiff asked to attend religious services, and defendants' response, if any, to plaintiff's requests. Moreover, the amended complaint lacks facts related to when and how often plaintiff was prevented from attending services. Finally, the pleading fails to plausibly allege that the failure to attend services substantially burdened any of his religious beliefs. Accordingly, plaintiff's First Amendment free exercise claims are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7. Conspiracy

Construing the amended complaint liberally, plaintiff alleges that defendants conspired to "promote practices and policies" resulting in violations of plaintiff's constitutional rights. *See generally* Am. Compl.

A conspiracy claim under § 1983 must allege that: (1) an agreement existed between two or more state actors to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Id*. at 325.

Plaintiff does not assert any facts giving rise to a conspiracy, but instead makes

conclusory statements that defendants conspired with each other.  Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants.  "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be enough to raise a right to relief above the speculative level." *Dorsey v. Fisher*, No. 09-CV-1011 (GLS), 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009) (citations omitted); *see Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds").

Accordingly, plaintiff's conspiracy claims are dismissed for failure to state a claim. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).

### 8.  ADA[7]

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA is applicable to inmates in state correctional facilities.  *See Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206, 213 (1998).  "Under Title II of the ADA . . . prison officials may not discriminate against inmates on the basis of disability in administering work programs."  *Harrington v. Vadlamudi*, No. 9:13-CV-795 (BKS/RFT), 2015 WL 4460994, at *3 (N.D.N.Y. July 21, 2015) (citations omitted).  To successfully plead a Title II claim, "[t]he inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being

---

[7] Plaintiff does not specify what portions of the ADA are triggered.  Reading the amended complaint liberally, it appears that he brings this action under Title II.

denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity." *Allah v. Goord*, 405 F.Supp.2d 265, 274 (S.D.N.Y. 2005).

Title II of the ADA does not provide for individual capacity suits for monetary damages. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Where, as here, a plaintiff seeks monetary damages against individuals in their official capacities, *see* Am. Compl. at 15, the plaintiff must plead that the defendant "was motivated by discriminatory animus or ill-will based on the plaintiff's disability." *See Keitt v. New York City*, 882 F.Supp.2d 412, 455-57 (S.D.N.Y. 2011) (holding that under *Garcia*, claims for money damages against state officials in their official capacities under Title II of the ADA are barred by the Eleventh Amendment, absent a showing that a violation was motivated by discriminatory animus or ill will due to the disability) (citing *Garcia*, 280 F.3d at 112).

Here, plaintiff's cursory reference to the denial of his requests, *see* Am. Compl. at 4, is insufficient to state a claim under the ADA. Plaintiff does not allege that he suffers from a disability and that he is being denied from participation in Upstate C.F.'s services, programs or activities due to a disability. Accordingly, to the extent that plaintiff is attempting to assert a claim under the ADA, these claims are dismissed for failure to state a claim upon which relief can be granted.

Moreover, even assuming plaintiff suffers from injuries that are eligible for Title II protection, the amended complaint lacks facts suggesting that any official was motived by discriminatory animus or ill will due to his disability. Plaintiff's claims are deficient because he fails to allege that he was treated differently than other inmates because of his disability. *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514 at *19 (S.D.N.Y. Aug. 2, 2013)

("[T]he Court need not engage in an extensive analysis of the ADA requirements because Plaintiff makes absolutely no allegation that he was discriminated against, or that Defendants failed to provide him with a reasonable accommodation—i.e., railings on the walkway or an alternative to traveling through the walkway—*because* of his disability[.]") (citing *Henrietta D. v. Bloomberg*, 331 F.3d. 261, 278 (2d Cir. 2003) (stating that an ADA plaintiff must demonstrate that a denial of benefits occurred "because of" the disability); *Rosado v. Herard*, No. 12-CV-8943, 2014 WL 1303513, at *6 (S.D.N.Y. Mar. 25, 2014) (dismissing ADA and Rehabilitation Act where plaintiff failed to "plead[ ] facts demonstrating that he was denied access to therapeutic group sessions because of a disability").

Accordingly, plaintiff's ADA claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### III.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 11) is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket report as follows: (1) add James, Annucci, Rodriguez, St. Mary, LaPaige, Smith, Livernoise, and John Does #1 through #4 as defendants herein; and (2) terminate Captain John Doe as a defendant; and it is further

**ORDERED** that the amended complaint is **DISMISSED** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk shall enter judgment accordingly; and it is further

15

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff.

Dated: February 2, 2023
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge